UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID EDWARDS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>VINCENT HU, et al.,<br><br>　　　　　Defendants. | No.  2:13-cv-2216 JAM DB P<br><br><br>ORDER AND<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This matter proceeds on plaintiff's first amended complaint against defendants Dr. Vincent Hu and Dr. Rita McIntyre on an Eighth Amendment medical indifference claim. Pending now are the defendants' separate motions for summary judgment and plaintiff's cross-motions for summary judgment. Also pending is plaintiff's "motion for extension of time for discovery of defendant McIntyre and motion to compel discovery." Each of these motions is fully briefed and ready for disposition.

**A.     Plaintiff's Allegations**

In the first amended complaint, plaintiff brings suit against Supervising Dentist Dr. Hu and Chief Dentist Dr. McIntyre, both employed at all relevant times at California State Prison in Solano, California ("CSP-Solano").

Plaintiff arrived at CSP-Solano in April 2005. Since his arrival, plaintiff claims that he did

1  not receive any dental care, routine or otherwise, until 2009.

2  On May 1, 2008, plaintiff submitted a request for emergency dental care after his lower left molar broke in half. When plaintiff did not receive a response, he filed an appeal on May 11, 2008, requesting that his tooth be saved by a permanent crown or, in the alternative, an implant. Plaintiff finally received treatment on February 17, 2009.

Based on the exhibits attached to the pleading, Dr. Hu denied plaintiff's grievance at the first level of review after noting that plaintiff was ducated on May 13, 2008, for a triage appointment, and he received an age-related examination on May 21, 2008. At the second level of review, Dr. McIntyre denied plaintiff's appeal after determining that plaintiff had already received numerous dental appointments. Plaintiff's appeal was denied at the third level of review on May 11, 2010.

Plaintiff accuses the defendants of lying with respect to their claims that plaintiff had been seen numerous times by the dental team in response to his May 1, 2008, request. Plaintiff states he was not triaged on May 13, 2008. As to the May 21, 2008, appointment, plaintiff did meet with a dentist, but he was not examined and did not receive an x-ray. Plaintiff next accuses defendants of implementing faulty procedures related to the scheduling of appointments and annual examinations at CSP-Solano. Lastly, plaintiff claims the defendants were responsible for the delay in his dental care.

As a result of defendants' actions, plaintiff lost half of his tooth.

## II.  Relevant Procedural Background

Prior to initiating this action, plaintiff filed a lawsuit in the Solano County Superior Court, Case No. FCS038699, containing, inter alia, an allegation of deliberate indifference to his dental needs. Statement of Undisputed Facts in Supp. McIntyre Mot. Summ. J. ("MSUF") (ECF No. 34-2) ¶ 35. The case was dismissed without leave to amend after a demurrer was sustained. MSUF ¶ 36. This dismissal was affirmed on appeal on March 26, 2013. MSUF ¶ 37.

Plaintiff then filed this lawsuit on October 23, 2013. Plaintiff's complaint was screened on April 29, 2014, and dismissed with leave to amend for failure to state a claim. (ECF No. 7.) Plaintiff filed the operative pleading on May 21, 2014. (ECF No 10.)

On November 9, 2015, service was ordered on the defendants. Dr. Hu filed an answer on February 4, 2016, and Dr. McIntyre filed an answer on March 25, 2016.

Pursuant to the February 9, 2016, Discovery and Scheduling Order ("DSO"), the discovery deadline was May 27, 2016, and the deadline for filing dispositive motions was August 19, 2016. (ECF No. 18.)

Dr. Hu moved for summary judgment on April 13, 2016. (ECF No. 26.) In response, plaintiff filed an opposition and cross-motion for summary judgment. (ECF No. 30.)

Dr. McIntyre moved for summary judgment on August 19, 2016. (ECF No. 34.) Plaintiff filed objections to this motion and a cross-motion for summary judgment. (ECF No. 37.) He has also filed a motion for extension of time to file a motion to compel. (ECF No. 36.)

**III.    Facts**

**A.    Plaintiff's Dental Care Before May 1, 2008**

At all relevant times, plaintiff was an inmate housed at CSP-Solano. Compl. Plaintiff arrived at CSP-Solano on April 17, 2005. MSUF ¶ 1. When he arrived, he was scheduled for a new arrival dental examination for May 5, 2005, but he did not appear for the examination; plaintiff's dental records do not provide a reason for his absence. MSUF ¶ 9. Plaintiff denies that he was informed of this appointment, and he received no further dental care until the incident at issue in this case. Pl.'s Opp'n to McIntyre's Mot. Summ. J. (ECF No. 37) at 3. Plaintiff did not have any known problems with his teeth and did not submit any healthcare services request forms for dental care prior to May 1, 2008. MSUF ¶ 7.

Dr. McIntyre was the Chief Dentist at CSP-Solano. MSUF ¶ 2. Dr. McIntyre was not plaintiff's treating dentist and did not provide him with dental care. MSUF ¶ 3.

Dr. Hu began his employ at CSP-Solano on November 17, 2007, where he worked as a supervising dentist until December 15, 2012. Hu Statement of Undisputed Facts in Supp. of Hu Mot. Summ. J. ("HSUF") (ECF No. 26-3) ¶¶ 3-4.  Dr. Hu had no knowledge of plaintiff's dental treatment prior to beginning his employment at CSP-Solano on November 17, 2007; he was not plaintiff's treating dentist and he has never met him. HSUF ¶¶ 6-8.

////

3

**B.     Plaintiff's Dental Care After May 1, 2008**

On May 1, 2008, plaintiff's No. 19 tooth broke while he was eating. MSUF ¶ 10. That same day, plaintiff submitted a California Department of Corrections and Rehabilitation ("CDCR") 7362 Health Care Services Request form ("the 7362 Request") for dental care and to have the tooth breakage considered an "emergency."[1] MSUF ¶ 13.

Pursuant to California Code of Regulations title 15, section 3354(f)(1), a dental emergency is defined as follows:

> A dental emergency, as determined by health care staff, includes any medical or dental condition for which evaluation and treatment are necessary to prevent death, severe or permanent disability, or to alleviate disabling pain.

When plaintiff was not seen by a dentist for the broken tooth by May 11, 2008, he submitted a CDCR 602 Inmate/Parolee Appeal form ("the 602 inmate grievance") requesting a permanent crown or implant. MSUF ¶ 14.

A permanent crown is a custom crown created using precious metals fabricated in a dental laboratory. HSUF ¶ 23. Pursuant to CDCR policies and procedures, permanent crowns and implants are excluded services but stainless steel crowns are included. MSUF ¶ 32. Providing stainless steel crowns was consistent with Medi-Cal standards in place at that time. Decl. of W. Kushner, D.D.S., in Supp. of McIntyre Mot. Summ. J. (ECF No. 42-1) ¶ 3.

**1.     The May 13, 2008, Triage Appointment**

Plaintiff met with a dentist at CSP-Solano, Dr. Cheung, on May 13, 2008. MSUF ¶ 14. At this appointment, Dr. Cheung examined plaintiff's tooth with a mirror to confirm that it was broken and informed plaintiff that permanent crowns and implants are excluded services at CSP-Solano. MSUF ¶¶ 15-16; Pl.'s Decl. ¶ 14. Dr. Cheung wrote in his notes that the No. 19 tooth was restorable and that plaintiff was experiencing "some sensitivity." MSUF ¶ 15. Plaintiff was then scheduled for an age-related examination on May 21, 2008. MSUF ¶ 17. He was also placed on a priority-two treatment list, which meant that he would be provided treatment within 120 days.

---

[1] Plaintiff speculates that Dr. McIntyre had notice of his broken tooth following the filing of this form, but submits no evidence to support this claim. Pl.'s Opp'n McIntyre MSJ (ECF No. 37) at 6.

HSUF ¶ 6.

### 2. The May 21, 2008, Age-Related Examination

Plaintiff's dental records reveal that he received an age-related examination on May 21, 2008.[2] MSUF ¶ 18. They also indicate that he received x-rays at this appointment and that he was informed that CDCR policies authorized a stainless steel crown for his broken tooth but not a permanent crown. MSUF ¶¶ 19-20.

### 3. The July 21, 2008 Appointment

On May 27, 2008, plaintiff received an informal response to his 602 inmate grievance wherein a dental assistant noted that plaintiff had a triage appointment on May 13, 2008, and that he will be scheduled for treatment within 120 days. HSUF ¶ 21.

Plaintiff appealed the informal response on June 1, 2008, writing "This is unacceptable, I want in writing that you will fix my tooth to my satisfaction, not yours." Compl. Ex. B (ECF No. 1). Dr. Hu received this appeal on June 16, 2008. HSUF ¶¶ 21-22.

On July 21, 2008, plaintiff met with Dr. Cheung in response to the 602 inmate grievance. Pl.'s Decl. ¶ 24, Ex. B (ECF No. 30-2) at 12; Compl. Ex. E (ECF No. 1 at 20-21). Plaintiff states that no exam, x-ray or treatment was offered to him at this appointment; instead, he was told that CSP-Solano excluded permanent crowns and implants but that a stainless steel crown was available to him after the tooth was ground down. Pl.'s Decl. ¶¶ 22-23; Pl.'s Dep. at 40:1-14. Alternatively, plaintiff could have his tooth extracted. Pl.'s Dep. at 40:7-10. Plaintiff declined both of these options because he wanted a permanent crown. Id. at 41:6-14.

Dr. Hu denied plaintiff's 602 inmate grievance at the first level of review on July 23, 2008, because permanent crowns and implants are excluded services. Compl. Ex. E. Dr. Hu also noted that plaintiff was receiving dental care, as evidenced by the May 13, 2008, triage

---

[2] Plaintiff disputes that an age-related examination occurred on May 21, 2008, and he questions the authenticity of the dental records submitted by the defendants. Even assuming *arguendo* that the records were falsified, there is no evidence that the defendants were responsible for the falsification. Furthermore, these records existed in plaintiff's medical file before this case was initiated, as evidenced by the fact that both defendants refer to the records in their respective responses to plaintiff's 602 inmate grievance.

5

appointment; his placement on the priority-two list for treatment; and the May 21, 2008, age-related examination. Id. Plaintiff's only interaction with Dr. Hu was during the processing of this appeal. HSUF ¶ 9.

### 4. The August 2008 Transfer Recommendation

On August 4, 2008, plaintiff's correctional counselor submitted him for evaluation for an out-of-state transfer pursuant to California's Out-of-State Correctional Facility Program ("COCF") program. McIntyre MSJ Ex. T (ECF No. 42-1). This program allows the CDCR to involuntarily transfer inmates to correctional institutions located outside of California in order to ease prison overcrowding. Cal. Code Regs. tit. 15, section 3379(a)(9). Once an inmate is recommended for the out-of-state placement, his name is referred to the Health Records personnel for medical and dental screening. Decl. of V. Brumsfield in Supp. of McIntyre's MSJ (ECF No. 42-1) ¶ 14. If the inmate is medically rejected for out-of-state placement, this would be noted in the COCF transfer waiting list form. Id. ¶ 15. If an inmate is medically cleared, his case would be reviewed by the Classification Committee. Id. ¶ 16.

On August 14, 2008, a dental assistant determined that plaintiff was "eligible (dental) for a transfer." Pl.'s Statement of Undisputed Facts ("PSUF") (ECF No. 38) Ex. B. In a separate entry in his dental notes dated August 16, 2008, "COCF out of state" is handwritten and signed; although the name of the individual who signed this note is unclear, it is apparent that the signature begins with the letter "M" and underneath is handwritten "Chief Dentist." See id. (ECF No. 38 at 16). On August 18, 2008, plaintiff was deemed ineligible for a transfer by a registered nurse due to a temporary medical condition. McIntyre MSJ Ex. U (ECF No. 42-1).

### 5. The November 20, 2008, Comprehensive Examination

Plaintiff appealed the first level denial of his 602 inmate grievance on August 10, 2008. Compl. Exs. B-C. This appeal was assigned on August 25, 2008. Compl. Ex. B.

On November 20, 2008, plaintiff received a "comprehensive exam per Dr. McIntyre." MSUF ¶ 21; Pl.'s Decl. ¶ 26, Ex. B (ECF No. 30-2 at 14). At this appointment, plaintiff received a dental examination, x-rays, and a treatment plan. MSUF ¶ 21; Pl.'s Decl. ¶ 27. It was noted that plaintiff's No. 19 tooth was restorable, and he was to be seen for a follow-up restoration

appointment "ASAP." MSUF ¶ 21.

### 6. The January 12, 2009, Appointment

On January 12, 2009, plaintiff had another dental appointment "for 602 treatment." Pl.'s Decl. Ex. B (ECF No. 30-2 at 15). During this appointment, plaintiff was again informed that the CDCR does not authorize permanent crowns, and he was again offered a stainless steel crown, which he declined. Id.

### 7. The February 17, 2009, Treatment

On February 17, 2009, plaintiff had a dental appointment after a filling on an unrelated tooth fell out. Pl.'s Decl. ¶ 32, Ex. B (ECF No. 30-2 at 17). Plaintiff claims that for the first time he was informed of all of the options available to him to treat the No. 19 tooth. Pl's Decl. ¶ 32. The dentist explained to him that if he were to install a temporary stainless steel crown, he would have to grind the remaining part of this tooth down, making it uncertain if the temporary crown would hold. Pl.'s Decl. ¶ 34. The dentist then explained that if plaintiff intended to have a permanent crown installed at a later date, then he could fill the broken area with a temporary hard plastic composite that would not require grinding the remaining tooth down. Pl.'s Decl. ¶ 35. Plaintiff refused the stainless steel crown and instead opted for the hard plastic composite. MSUF ¶ 24.

### 8. The April 14, 2009, Second Level of Review Denial

On April 14, 2009, Dr. McIntyre denied plaintiff's appeal at the second level of review insofar as plaintiff sought a permanent crown, which was prohibited under CDCR policy. MSUF ¶ 34. Dr. McIntyre also made note of the dental care that plaintiff had received since May 1, 2008, including the May 13, 2008, triage appointment; his placement on a priority-two list for treatment within 120 days; the May 21, 2008, age-related examination; the November 20, 2008, appointment; the February 19, 2009, examination and plaintiff's refusal of the stainless steel crown and extraction; a March 2, 2009, oral surgery consultation, and a March 9, 2009, periodontal health evaluation. Id.

Plaintiff appealed the second level denial on April 23, 2009. Compl. Ex. E. The Director's Level of Review denied plaintiff's 602 inmate grievance on May 11, 2010. Id.

7

On May 16, 2012, and November 13, 2015, plaintiff had dental appointments where he again refused a stainless steel crown. MSUF ¶ 27.

In 2016, plaintiff was informed that decay had been found in the area of the No. 19 tooth. MSUF ¶ 28. He does not know the cause of this decay. MSUF ¶ 29.

**IV.     Legal Standards**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).  Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.  Summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 447 U.S. at 248.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Central Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

////

**V.     Discussion**

   **A.     Plaintiff's Motion for Extension of Time**

Plaintiff has filed a motion for an extension of the discovery deadline and a motion to compel defendant to respond to plaintiff's various discovery requests, which were served on April 28, 2016, and which include 14 requests to produce documents, 25 interrogatories, and 101 requests for admissions. On May 27, 2016, defendant objected to these requests as untimely under the discovery scheduling order or DSO, having been served less than 60 days before the end of the discovery deadline.

Pursuant to the DSO, "The parties may conduct discovery until May 27, 2016. Any motions necessary to compel discovery shall be filed by that date. All requests for discovery pursuant to Fed. R. Civ. P. 31, 33, 34, or 36 shall be served not later than sixty days prior to that date."

Good cause must be shown for modification of the scheduling order. Fed. R. Civ. P. 16(b)(4). The Ninth Circuit explained:

> Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension. Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. Although existence of a degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for modification. If that party was not diligent, the inquiry should end.

Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir.1992) (internal quotation marks and citations omitted). Therefore, parties must "diligently attempt to adhere to the schedule throughout the course of the litigation." Jackson v. Laureate, Inc., 186 F.R.D. 605, 607 (E.D. Cal. 1999). The party requesting modification of a scheduling order has the burden to demonstrate:

> (1) that she was diligent in assisting the Court in creating a workable Rule 16 order, (2) that her noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding her efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference, and (3) that she was diligent in seeking amendment of the Rule 16 order, once it become apparent that she could not comply with the order.

10

Id. at 608 (internal citations omitted).

Plaintiff did not move for a modification of the scheduling order or file a motion to compel further responses to his discovery requests until August 29, 2016, over three months after he received defendant's objections and three months after the close of discovery. Plaintiff offers no explanation for this delay. The undersigned thus finds that good cause does not exist to extend the discovery deadline, and plaintiff's motion will be denied.

**B.     Eighth Amendment Inadequate Medical Care**

To state a claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976).  To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendant possessed a sufficiently culpable state of mind. Snow v. McDaniel, 681 F.3d 978, 982 (9th Cir. 2012), overruled in part on other grounds by Peralta v. Dillard, 744 F.3d 1076 (9th Cir. 2014) (en banc); Wilson v. Seiter, 501 U.S. 294, 297-99 (1991).

To meet the objective element, plaintiff must demonstrate the existence of a serious medical need. Estelle, 429 U.S. at 104.  Such need exists if the failure to treat the injury or condition "could result in further significant injury" or cause "the unnecessary and wanton infliction of pain." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotes and citations omitted).  Serious medical needs include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; [and] the existence of chronic and substantial pain." McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled in part on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997).

Under the subjective element, a prison official is deliberately indifferent only if the official "knows of and disregards an excessive risk to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (internal quotes and citation omitted).  To prevail on a claim for deliberate indifference, a prisoner must demonstrate that the prison official "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both be aware of

the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988). The court "need not defer to the judgment of prison doctors or administrators" when deciding the deliberate indifference element. Hunt v. Dental Dept., 865 F.2d 198, 200 (9th Cir. 1989) (where prison officials were aware loss of his dentures was causing him severe pain and permanent physical damage, three month delay in providing pain relief and soft food diet constituted Eighth Amendment violation).

Delays in providing medical care may manifest deliberate indifference. Estelle, 429 U.S. at 104-05. To establish a claim of deliberate indifference arising from delay in providing care, a plaintiff must show that the delay was harmful. See Hallett v. Morgan, 296 F.3d 732, 745-46 (9th Cir. 2002); Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059. In this regard, "[a] prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); see also McGuckin, 974 F.2d at 1060.

In applying the deliberate indifference standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06.) A complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). A difference of opinion between medical professionals concerning the appropriate course of treatment generally does not amount to deliberate indifference to serious medical needs. Toguchi, 391 F.3d at 1058; Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). Also, "a

1   difference of opinion between a prisoner-patient and prison medical authorities regarding
2   treatment does not give rise to a [§]1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th
3   Cir. 1981). To establish that such a difference of opinion amounted to deliberate indifference, the
4   prisoner "must show that the course of treatment the doctors chose was medically unacceptable
5   under the circumstances" and "that they chose this course in conscious disregard of an excessive
6   risk to [the prisoner's] health." See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); see
7   also Wilhelm, 680 F.3d at 1123 (awareness of need for treatment followed by unnecessary delay
8   in implementing the prescribed treatment sufficient to plead deliberate indifference); see also
9   Snow, 681 F.3d at 988 (decision of non-treating, non-specialist physicians to repeatedly deny
10  recommended surgical treatment may be medically unacceptable under all the circumstances.)

**1.     Denial of Routine Dental Care**

Plaintiff's first claim is premised on the defendants' alleged failure to ensure that plaintiff received routine dental care between April 17, 2005, and May 1, 2008, and that this failure caused his No. 19 tooth to break and eventually decay. Although he was scheduled for an initial appointment on May 5, 2005, plaintiff denies that he was informed of the appointment.

Since there is no evidence that either defendant was responsible for the scheduling of inmates for dental appointments, routine or otherwise, it appears that plaintiff seeks to impose liability on the defendants by virtue of their supervisory roles. But government officials may not be held liable for the actions of their subordinates under a theory of respondeat superior. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). Liability may be imposed on supervisory defendants under § 1983 only if the supervisor: (1) personally participated in the deprivation of constitutional rights or directed the violations or (2) knew of the violations and failed to act to prevent them. Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Defendants cannot be held liable for being generally deficient in their supervisory duties.

Even assuming that the defendants were responsible for scheduling inmates for dental appointments or knew that their subordinates were not scheduling plaintiff for routine dental care and failed to act, there is simply no evidence linking the lack of routine dental care from April 17,

1 2005, to May 1, 2008, to the break in plaintiff's No. 19 tooth or to the tooth decay. Plaintiff, who
2 relies solely on "common knowledge," was required to come forth with competent medical
3 evidence to show that the lack of routine dental care at CSP-Solano was one of, if not the sole,
4 cause of his broken tooth and decay. This lack of evidence is determinative, and defendants are
5 entitled to summary judgment on this claim.

### 2. Denial of Timely Emergency Dental Care

7 Plaintiff next accuses the defendants of failing to ensure that plaintiff received timely
8 emergency dental care following the May 1, 2008, breakage.

9 Initially, insofar as plaintiff claims that his broken tooth was an "emergency" necessitating
10 an immediate response from the defendants, he submits no evidence to show that the break in his
11 tooth met the definition of a dental emergency under CDCR regulations, which would have
12 required an immediate evaluation and treatment in order to prevent death, severe or permanent
13 disability, or to alleviate disabling pain. Nothing in the record even remotely suggest that
14 plaintiff's broken tooth constituted a dental emergency. To the contrary, Dr. Cheung's May 13,
15 2008, dental note indicated only that plaintiff was experiencing "some sensitivity," and none of
16 the other dental notes even address plaintiff's pain.

17 Regarding plaintiff's claim against Dr. Hu, the undisputed facts demonstrate that this
18 defendant was not aware of plaintiff's broken tooth until June 16, 2008, when he received
19 plaintiff's appeal at the first level of review. Plaintiff then met with Dr. Cheung in July 2008 in
20 response to the grievance. At this appointment, plaintiff was informed that CDCR policy
21 excluded permanent crowns but that stainless steel crowns were available. Dr. Hu's subsequent
22 denial of plaintiff's appeal at the first level of review was based on the unavailability of the
23 specific treatment that plaintiff sought. While plaintiff did not receive any treatment for his tooth
24 during the first level of appeal, this was because he refused to accept the course of treatment that
25 was offered to him. Thus, any delay in treatment was not the result of Dr. Hu's failure to schedule
26 it or to ensure that it was provided, but instead due to plaintiff's decision to decline treatment.

27 As to Dr. McIntyre, there is a factual dispute as to when she first became aware of
28 plaintiff's broken No. 19 tooth. Dr. McIntyre declares that she did not learn of it until April 2009.

1   Plaintiff counters that she learned of it as early as August 2008. The record lends support to
2   plaintiff's position. His dental progress notes, for example, suggest that Dr. McIntyre, whose
3   name begins with an "M" and who was the Chief Dentist, reviewed plaintiff's dental records and
4   signed the August 16, 2008, dental note regarding the COCF transfer. The dental progress notes
5   also suggest that Dr. McIntyre received plaintiff's appeal to the second level of review on August
6   25, 2008, when it was assigned to a staff member – presumably to Dr. McIntyre, the reviewer at
7   the second level. And finally, plaintiff's November 20, 2008, comprehensive dental examination
8   was provided "per Dr. McIntyre," also suggesting that this defendant was aware of plaintiff's
9   broken tooth much early than she claims.

10  In any event, this factual dispute does not preclude summary judgment because there is no
11  showing of deliberate indifference under either set of facts. Assuming Dr. McIntyre did not learn
12  of plaintiff's dental issues until April 2009, as she claims, the record demonstrates that plaintiff
13  had earlier been informed of available treatment options for his broken tooth, which he declined.
14  Assuming, as plaintiff claims, that Dr. McIntyre reviewed plaintiff's dental records as early as
15  August 2008, the evidence demonstrates that Dr. McIntyre ordered a comprehensive examination
16  that occurred on November 20, 2008, within three months of her review of his dental records.
17  Although plaintiff asserts that Dr. McIntyre ordered his transfer to another institution instead of
18  offering him dental care, the facts show that the transfer request was submitted by plaintiff's
19  correctional counselor, not Dr. McIntyre. No reasonable trier of fact would find deliberate
20  indifference under either set of facts.

21  Moreover, although plaintiff claims that he had to wait over six months before he was
22  offered treatment, it is undisputed that he was in fact offered treatment options in May and
23  November 2008 that he declined twice. At best, then, this case concerns plaintiff's disagreement
24  with the course of dental treatment. Since plaintiff has submitted no medical evidence suggesting
25  that the treatment offered to him was medically unacceptable[3], defendants' motion for summary

---

[3] Plaintiff's expert witness, Dr. Corbin Eylander, states that "the standard and adequate dental care to permanently save a #19 molar that has fractured and the lingual cusps destroyed, such as [plaintiff's] tooth, is to install a permanent crown in order to save the tooth from having to be extracted." Decl. of Dr. Corbin Eylander in Supp. of Pl.'s Cross-Mot. Summ. J. (ECF No. 38 at

15

judgment must be granted, and plaintiff's cross-motions must be denied. In light of this recommendation, the undersigned declines to consider defendant McIntyre's alternative arguments for summary judgment.

**VI.  Conclusion**

Based on the foregoing, IT IS HEREBY ORDERED that plaintiff's motion for extension of time (ECF No. 36) is denied; and

IT IS HEREBY RECOMMENDED that:

A. Dr. Hu's motion for summary judgment (ECF No. 26) be granted;

B. Dr. McIntyre's motion for summary judgment (ECF No. 34) be granted;

C. Plaintiff's cross-motions for summary judgment (ECF Nos. 30, 37) be denied;

D. Judgment be entered for the defendants; and

E. The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

Any reply to the objections shall be served and filed within fourteen days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  January 30, 2017

/DLB7;
DB/Inbox/Substantive/edwa2216.msj.v2

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

---

37-38). Assuming this to be true, this witness does not opine on whether the offer of a stainless steel crown, which was consistent with Medi-Cal standards, was medically unacceptable. It is well-established that the mere availability of an alternative treatment does not establish deliberate indifference. Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).